Jack L. Nicoll and Ruth Nicoll v. Commissioner.
Nicoll v. Commissioner
Docket No. 72456.
United States Tax Court
T.C. Memo 1961-111; 1961 Tax Ct. Memo LEXIS 240; 20 T.C.M. (CCH) 552; T.C.M. (RIA) 61111; April 18, 1961
*240 The petitioner, Ruth Nicoll, a school teacher in the public school system of the City of New York, was granted, on December 28, 1953, a sabbatical leave "for the purpose of Health" for the period February 1 to July 31, 1954. While the evidence shows that prior to 1954 she was ill and was treated by a doctor at a clinic, there is no evidence as to the nature or duration of her illness. Held, that she has failed to show that her absence from work during the period in question was, in fact, on account of sickness; and the respondent's disallowance of a "sick pay" exclusion claimed under section 105(d) of the Internal Revenue Code of 1954 on account of her wages for that period is approved. Jack L. Nicoll, pro se, 117 Liberty St., New York, N. Y. Herbert Rothenberg, Esq. *241 , for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency of $393.40 in the petitioners' income tax for the taxable year 1954. The issue presented is whether the respondent erred in disallowing an amount of $1,260.48 claimed by the petitioner Ruth Nicoll as an exclusion from gross income under section 105(d) of the Internal Revenue Code of 1954, relating to wages or payments in lieu of wages paid while an employee is absent from work on account of sickness. Findings of Fact The petitioners are husband and wife, residing in the Borough of Manhattan, New York, New York. For the taxable year 1954 they filed a joint Federal income tax return with the director of internal revenue for the third district of the City of New York. The petitioner Jack L. Nicoll is an attorney at law, who in the year in question, 1954, was a judge in the City of New York. During 1954, and prior thereto, the petitioner Ruth Nicoll was a school teacher at Public School 166, District 8, Borough of Manhattan, New York City. At some time prior to 1954, apparently in the fall of 1953, Ruth Nicoll was sick and *242 was in a medical center for about two weeks for observation or treatment. She was treated by a Dr. Theodore Russell. At some time before December 28, 1953, she made application to the Board of Education of the City of New York for a leave of absence. In connection with such application, she was required to be examined by physicians of the board of education. On December 28, 1953, such board issued to her a notice, on its official form "Official Notice of GRANT OF SABBATICAL LEAVE" that she had been "granted a sabbatical leave of absence for the period beginning 2/1/54 and terminating 7/31/54 for the purpose of Health." Ruth Nicoll's basic pay was $562.50 per month for the full year. The compensation is payable each month except that at the end of June one check is issued for the salary for June and July and in September one check is issued for the salary for August and September. During the period February 1 to July 31, she received her salary but was required to pay a substitute 40 percent of the salary for the months of February to June. In their joint return for the year 1954, which had been prepared for the petitioners by an accountant, the petitioners claimed $1,311.48 as *243 Ruth Nicoll's sick pay over the six-month period (calculated by subtracting from the regular salary the amount paid to a substitute). From this was subtracted an amount of $51.00 for the first 7 days of absence from work, and the balance of $1,260.48 was claimed as an exclusion from gross income pursuant to section 105(d) of the Internal Revenue Code of 1954. The respondent disallowed the claimed exclusion and restored it to taxable income. Opinion Since the respondent disallowed the claimed exclusion, the burden of proof was upon the petitioners to establish that they are entitled to the exclusion claimed under section 105 of the Internal Revenue Code of 1954, which, in material part, provides as follows: AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions. - Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, *244 or (2) are paid by the employer. * * *
(d) Wage Continuation Plans. - Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. * * * At the hearing counsel for the respondent conceded that the issue is limited to the question whether petitioner Ruth Nicoll was actually sick during the period claimed and, if so, the length of the illness. In this connection it may be noted that in a published ruling the respondent has recognized that provisions of a state statute, or of by-laws or regulations of a board of education authorizing payments in lieu of wages to a teacher on sabbatical leave for the restoration of health, *245 constitute a wage continuation plan within the contemplation of section 105(d), and that amounts received under such a plan for periods during which the teacher is, in fact, incapacitated on account of sickness may be excluded within the limitations of the statute. Rev. Rul. 58-91, 1958-1 C.B. 49. However, it is the respondent's contention that a taxpayer claiming an exclusion for salary paid pursuant to such a wage continuation plan must show that his absence from work for the period claimed was, in fact, due to sickness. Such contention is in accord with the Income Tax Regulations promulgated pursuant to section 105(d), [1] which provide among other things that even though the terms of a plan provide that benefits are to be continued only as long as the employee is absent from work on account of a personal injury or sickness, section 105(d) does not apply to payments made to an employee for a period of absence from work where such absence is not, in fact, due to a personal injury or sickness. We think this regulation is a reasonable interpretation of the requirements of section 105(d). Accordingly, the question is whether the petitioners have met their burden of showing *246 that petitioner Ruth Nicoll's absence from work during the period [2] for which the exclusion was claimed was due to sickness. *247 At the hearing the petitioner Jack L. Nicoll, who is an attorney, represented himself and his wife. He introduced in evidence a notice issued to Ruth Nicoll by the Board of Education of New York City on December 28, 1953, granting her sabbatical leave for the period from February 1, 1954 to July 31, 1954, "for the purpose of Health", and testified that prior to the granting of such leave his wife was required to undergo an examination by doctors of the board of education. However, no evidence was submitted to show the requirements of the board of education for leave of this character. While the evidence establishes that the petitioner was sick at some time prior to 1954, and that she was in a clinic for about two weeks and was treated by a doctor, the evidence does not show precisely when this occurred. And even though it be assumed that she was sick when examined by the board of education doctors, we do not know when this occurred. It was, of course, sometime prior to December 28, 1953, the date on which the leave was granted. Furthermore, the leave was not to commence until February 1, 1954, which was about a month after the notice was issued granting the leave. Whether she was *248 sick, or continued to work, during this interim prior to February 1, 1954, is not shown. Neither the petitioner Ruth Nicoll, nor her doctor nor any doctor or representative of the board of education testified. Hence, we are without evidence as to the basis upon which the leave was granted, the nature of the petitioner's illness, or the duration thereof. The petitioner Jack L. Nicoll was the only witness. However, giving due credence to his testimony, we find it insufficient to show that his wife was sick during the period in question or, if so, whether such sickness extended over the full period. His testimony, portions of which are set forth in the margin, [3] was quite indefinite as to the time or duration of illness. He did not disclose the nature of her illness, and stated that he did not know the nature of the treatment given her. He further stated that he had not, for seven years, seen the doctor who treated his wife and that he did not want to get in contact with him. It seems clear from his testimony that his wife was not hospitalized during the period in question and it is not clear as to whether she was, during that period, under the care of a doctor. His testimony that *249 his wife felt that she could not teach during the period in question would seem to have reference to the time that she applied for the extended leave, and constituted her reason for requesting the leave. To us it does not amount to proof that, during the period in question, she was unable to teach on account of sickness. *250 We think the record presented by the petitioners falls far short of showing that the absence of petitioner Ruth Nicoll from work during the period in question, or any portion of such period, was on account of sickness, within the meaning of section 105(d). Accordingly, we are constrained to approve the respondent's determination. Decision will be entered for the respondent. Footnotes
1. § 1.105-4(a)(2)(3) and (4) of the Income Tax Regulations provides as follows: (ii) Section 105(d) is applicable if, and only if, the employee is absent from work and such absence is due to a personal injury or sickness. Thus, if an employer has a plan for continuing the wages of employees when they are absent from work, regardless of the cause of the absence from work, section 105(d) is applicable to any payments made under this plan to an employee whose absence from work is in fact due to a personal injury or sickness. On the other hand, although the terms of a plan provide that benefits are to be continued only as long as the employee is absent from work on account of a personal injury or sickness, section 105(d) does not apply to payments made to an employee for a period of absence from work where such absence is not in fact due to a personal injury or sickness. (3)(i) Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. * * * (ii) Similarly, an employee who incurs a personal injury or sickness during his paid vacation is not allowed to exclude under section 105(d) any of the vacation pay which he receives, since he is not absent from work on account of the personal injury or sickness. Likewise, a teacher who becomes sick during the summer or other vacation period when he is not expected to teach, is not entitled to any exclusion under section 105(d) for the summer or vacation period. However, if an employee who would otherwise be at work during a particular period is absent from work and his absence is in fact due to a personal injury or sickness, a payment which he receives for such period under a wage continuation plan is subject to section 105(d). (4) A period of absence from work shall commence the moment the employee first becomes absent from work and shall end the moment the employee first returns to work. However, the exclusion provided under section 105(d)↩ is applicable only to payments attributable to a period of absence from work which is due to a personal injury or sickness, and to payments attributable to a period when the employee would have been at work but for such personal injury or sickness. 2. There is some confusion in the record as to the precise period involved. The petitioner Jack L. Nicoll testified that the accountant made the exclusion for the 6-month period which included July, that he, Nicoll, thought this was in error, and that the period should have been 5 months, beginning February 1 and ending June 30. Presumably his view was based upon the fact that she would not have been required to be at work in any event in July. (Her substitute was paid only for the months of February through June.) See Edward I. Weinroth, 33 T.C. 58, in which we held that a taxpayer is not entitled to a "sick pay" exclusion for wages paid him while he was incapacitated during his summer vacation, on the ground that section 105(d)↩ applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. As indicated hereinabove, however, neither party has raised a question about the period.
3. At one point he testified: The Court: One other thing: You say your wife was actually sick? The Witness: Yes, or she wouldn't apply. The Court: You ought to have something in the record. The Witness: Well, some time prior to this or before that, [apparently before the leave was granted] and I can not find the records, she was in the Medical Center for quite awhile. I haven't got my cancelled checks. I didn't keep them when I was on the bench. She was there for treatment. My wife was sick. She did not leave New York during this time at all, because she had to stay in New York. There were no trips made. The Court: She was under a doctor's care? The Witness: She had a doctor with her all this time. She did not leave like someone who goes to Florida or goes to Europe. She was constantly at home and was not out of town. She was going to the doctor. She was a sick girl at this time. At another point he stated: The Witness: I have openly stated she wasn't confined to the hospital. She was at home. She was at a period hospitalized, but I haven't got it. She went to the doctor, and she was at home. She felt she couldn't teach during that particular period.↩